Darlene TAYLOR et vir, Appellants,

v.

Mary L. ANDERSON et al., Appellees.

No. 15021.

Court of Civil Appeals of Texas, San Antonio.

Dec. 1, 1971.

Rehearing Denied Dec. 29, 1971.

them recovery for personal injuries allegedly suffered by Mrs. Taylor when the car which she was operating was struck by an automobile belonging to defendant, Clifton R. Anderson, which was being driven at the time by his minor daughter, Mary L. Anderson, the other defendant. Mrs. Taylor claimed that she received injuries consisting of a cervical sprain, commonly called a "whiplash" injury, as a result of the accident. Although the jury found that the negligence of Miss Anderson was the proximate cause of the "occurrence in question," a special issue inquiring whether Mrs. Taylor was injured as a result of such "occurrence" was answered favorably to defendants, and the trial court allowed plaintiffs to recover only for the damage to their automobile.

Shortly after the accident, which occurred on April 29, 1968, Mrs. Taylor was taken to a military hospital in San Antonio by ambulance. According to her testimony, she was given analgesic tablets and told to go home and rest. She returned to the hospital the next day and again a few days later. She testified that, although she complained of pain in her back, neck and shoulder, the military doctors never examined her neck or back. After the third visit, she went to a lawyer, who referred her to a civilian doctor who testified that he treated her for a cervical sprain over a period of several months.

The first question concerns the admission in evidence, over the objection of plaintiffs, of the following entry from the records of the military hospital: "Unable to find anything on physical examination."

James L. Branton, Carter, Callender & Branton, San Antonio, for appellants.

Beckmann, Stanard, Keene, Krenek & Fulton, San Antonio, for appellees.

CADENA, Justice.

Plaintiffs, Darlene Taylor and husband, Norman M. Taylor, appeal from a judgment, based on a jury verdict, denying

Although our Business Records Act, Article 3737e, Tex.Rev.Civ.Stat.Ann., in unqualified terms makes a memorandum or record of a condition "competent evidence of the . . . existence of the condition" if certain requirements relating to the making of the record are satisfied, our Supreme Court has given the statute a restricted interpretation insofar as hospital records reflecting a medical diagnosis are

concerned. In *Loper v. Andrews,* 404 S. W.2d 300, 305 (Tex.1966), it was said that the statute permits the reception in evidence of diagnostic entries in hospital records only if "the diagnosis records a condition resting in reasonable medical certainty." A diagnosis rests in reasonable medical certainty if (1) it concerns a condition which is apparent and observable by all, such as a severed limb or an open wound, or (2) if it is based on facts and findings which, while requiring expert interpretation, nevertheless involve a medical condition which is well recognized and reasonably certain such as according to *Loper,* a diagnosis of leukemia. The net effect of *Loper* is to limit the admissibility of diagnostic entries to those which record diagnoses upon which competent physicians would normally agree. Eubanks v. Winn, 469 S.W.2d 298, 296 (Tex.Civ.App.—Houston, 14th Dist.1971, Ref.n.r.e.).

■ In which category shall we place an entry which recites that the examining physician was "unable to find anything."? Is this merely a routine entry consisting of a report of the "patient's temperature, blood pressure . . . , external bruises, skin rash . . . , lacerations or injuries observable to persons generally, . . . noticeable external physical marks or defects, and similar facts not involving medical opinion . . . ." ? If so, then the entry is admissible as falling within the first example of a "non-controversial" diagnosis described in *Loper.* See Martinez v. Williams, 312 S.W.2d 742, 749 (Tex.Civ. App.—Houston 1958, no writ).

However, we conclude that the physician's report to the effect that he was "unable to find anything" must be interpreted as a statement of medical opinion. The entry is comparable to the recital, "No evidence of any fracture or other injuries" which was classified as a "conclusion and opinion of the doctor" in *Martinez.* 312 S.W.2d at 749.[1] Certainly, as specifically related to the case before us, no competent physician who found evidence of the existence of a cervical sprain would make an entry to the effect that he was "unable to find anything." When viewed in the context of this case, the entry is, in effect, a report that the physician found no evidence of a cervical sprain, or, for that matter, of any other injury, whether the existence of such injury was a medical condition apparent to all or not.

We must, therefore, determine whether this statement of medical opinion describes a condition concerning which competent physicians ordinarily would not disagree.

Apparently, as pointed out by Justice Pope in his concurring opinion in *Loper,* it is the function of the courts to determine which diagnoses are "non-controversial" and admissible, on the one hand, and which are "controversial" and inadmissible, on the other. 404 S.W.2d at 307. In the absence of expert testimony on the question of whether a particular diagnosis rests in reasonable medical certainty or not, a court must simply set about the task of determining, as best it can, whether a diagnosis rests in reasonable medical certainty or whether it rests primarily on "expert opinion, conjecture and speculation."

Recognizing our own lack of medical expertise, we turn to *Loper* for guidance. There a diagnosis of skull fracture was held inadmissible because (1) the entry recited merely that the examining physician *believed* that the plaintiff had sustained a skull fracture; (2) the diagnosis did not

---

1. Such an entry was held inadmissible in *Martinez* on the theory that the statute made admissible only hospital records reciting the existence of conditions which are "obvious or patently observable to persons generally. . . ." 312 S.W. 2d at 749. This interpretation of the statute is clearly indefensible under the Supreme Court's opinion in *Loper* which would admit "non-controversial" medical opinions and conclusions. *Martinez,* therefore, is cited in the text only in support of the conclusion that a recital of no evidence of any injury embodies a conclusion based on expert interpretation of factual findings.

purport to be based upon demonstrable medical facts; and (3) the question of whether or not the plaintiff had suffered a fracture of the skull was the subject of genuine dispute between the doctors who had examined the plaintiff. Unfortunately, we are unable to determine from the Loper opinion whether the presence of all three factors is essential to support a judicial pronouncement that a diagnosis does not rest in reasonable medical certainty, or whether a diagnosis must be classified as controversial if it is stated in the form of a belief, or if it does not purport to be based upon demonstrable medical facts, or if there is a genuine dispute among the doctors who examined the patient concerning his condition.

The entry before us is not couched in language of mere belief. As already pointed out, Loper does not disclose the weight to be given to the presence or absence of words demonstrating belief rather than knowledge. In view of the fact that diagnosis is as much an art as a science, we attach little importance to this factor. We do not believe that the Supreme Court, which in Loper unqualifiedly classified a diagnosis of leukemia as "non-controversial," would reach a different result if the record recites that the examining physician "believes" that the patient is suffering from leukemia.

We experience great difficulty in determining whether the entry in this case purports to be based upon demonstrable medical facts. Certainly, the entry does not contain a recital of the medical facts upon which the conclusion is based. But, once again, it is hard to believe that our Supreme Court would insist that the record contain an itemization of the demonstrable medical facts upon which the diagnosis is based, or that it at least contain a statement affirming that the doctor's conclusion is based on such demonstrable facts. Once again, the Supreme Court, in its approval of a diagnosis of leukemia, did not condition its nihil obstat on a recital of the de-

monstrable facts upon which the diagnosis is based. In any event, we conclude that a physician who states, in effect, that he found no evidence of injury, bases such conclusion on demonstrable medical facts or, in view of the negative form of the conclusion, on the absence of demonstrable medical facts which point to the presence of injury.

Here, as in Loper, the doctors who examined plaintiff disagreed concerning her condition. One found a cervical sprain. The other, according to his recorded conclusion, was unable to find anything. However, it must be pointed out that there was an interval of about three weeks between the two examinations. The entry in the hospital record, dated May 3, 1968, does not purport to state that there was no evidence of injury which would have been revealed by a physical examination three weeks later. The testimony of the second doctor cannot be interpreted as an assertion that the evidence of cervical sprain upon which he based his diagnosis was present three weeks earlier. It cannot be said, then, that there is a genuine dispute between the doctors concerning the condition of the plaintiff at the time that each doctor examined her. In Loper, if the plaintiff's skull was fractured as a result of the accident, the fracture was present at all times thereafter. It was not possible for both diagnoses to be correct in Loper. Here, for all we know, it was possible for one doctor to discover no evidence of injury on May 3, 1968, and for another doctor to discover such evidence three weeks later, merely because such evidence was not present on May 3.

We conclude that none of the three factors which led to the exclusion of the Loper diagnosis are present here. At the very least, we cannot say that the record establishes that the trial judge, who, necessarily, made the preliminary factual determination required to ascertain whether the evidence was admissible, abused his discretion or made a preliminary finding which

runs counter to the evidence. We find nothing in the record which would justify our setting aside the determination of the trial judge on the theory that the entry which he received in evidence shows a condition or diagnosis upon which competent doctors would likely disagree. Stated more simply, appellants have failed to establish that the trial court erred in allowing the hospital record to be read to the jury. Eubanks v. Winn, supra.

Appellants next complain of the submission of the special issue inquiring whether Mrs. Taylor had suffered physical injury as a result of the collision. The proximate cause issue submitted as a part of the cluster of issues inquiring as to defendants' negligence merely asked the jury whether the negligence of the defendants was a proximate cause of the "occurrence in question." The "occurrence in question" refers to the collision. Even if defendants' negligence proximately caused the collision, plaintiffs, in order to recover for physical injuries, would have to establish a causal connection between such negligence and the physical injuries. Therefore, in view of the manner in which the proximate cause issue was worded here, unless the evidence conclusively established that Mrs. Taylor was physically injured as a result of the collision, the submission of the special issue of which plaintiffs complain was proper.

There was evidence to the effect that, immediately after the collision, Mrs. Taylor stated that she was not hurt. Mr. Anderson testified that, immediately prior to the collision, the Anderson vehicle was travelling at a rate of about ten miles per hour, and that Miss Anderson applied the brakes before the Anderson car struck plaintiffs' automobile. At the time of the collision, plaintiffs' vehicle was at a standstill. The parties stipulated that the damage to plaintiffs' automobile was only $177.26, so that the evidence supported the conclusion that the force of the impact was not great. Under these circumstances, we cannot say that the evidence conclusively

established that Mrs. Taylor sustained physical injury as a result of the collision. The trial court, therefore, did not err in asking the jury whether Mrs. Taylor had sustained physical injuries as a result of the collision.

The judgment of the trial court is affirmed.